## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

MERRELL JAY,                                   )
                                               )
                        Plaintiff,             )
                                               )
          v.                                   )          Civil Action No. 13–01270 (RBW)
                                               )
DISTRICT OF COLUMBIA,                          )
                                               )
                        Defendant.             )
_____)

### MEMORANDUM OPINION

The plaintiff brought suit in this case against the Government of the District to Columbia

to recover attorney's fees incurred during administrative proceedings conducted under the

Individuals with Disabilities Education Act, 20 U.S.C. § 1400 (2012) (the "IDEA").  Complaint

for Declaratory Judgment & Relief ("Compl.") ¶ 1.  Currently before this Court is the Plaintiff's

Motion for Summary Judgment ("Pl.'s Mot.") and the Defendant's Opposition to Plaintiff's

Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Def.'s Opp'n).

After carefully considering the parties' submissions,[1] the Court concludes that it must grant in

part and deny in part both the plaintiff's motion and the defendant's cross-motion for the

following reasons.

### I.  BACKGROUND

The following facts are undisputed unless indicated otherwise.  The "[p]laintiff is a

twenty[-]year[-]old-adult student with a disability who has been deemed eligible to receive

_____

[1] In addition to the documents already referenced, the Court considered the following filings in reaching its decision:
(1) the Defendant's Answer to Complaint for Declaratory Judgment & Relief ("Answer"); (2) the Memorandum in
Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."); (3) the Opposition to Defendant's Cross-
Motion for Summary Judgment & Reply in Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply");
and (4) the Defendant's Reply to Plaintiff['s] Opposition to Defendant's Cross-Motion for Summary Judgment
("Def.'s Reply").

special education and related services from the District of Columbia Public Schools [(the "District")]."  Compl. ¶ 6.  On June 24, 2013, the plaintiff filed a thirty-nine page due process complaint against the District pursuant to the IDEA, "alleging [three] separate violations of [the] IDEA, including whether [the District] denied [him] . . . [Free Access to a Public Education ("FAPE")] . . . ."  Pl.'s Mem., Exhibit ("Ex.") 3 (Verified Statement of Attorney Alana Hecht ("Hecht Decl.")) ¶ 51; see also Compl. ¶ 39; Compl., Ex. B (Due Process Complaint) at 39.  "The parties had a resolution session on July 16, 2013[, where n]o agreement was reached between the parties, and the parties expressed a desire to go immediately to the due process hearing."  Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶ 54.  "Prior to [the plaintiff's] counsel doing much of the preparation for the Due Process Hearing, she reached out to [the District's] counsel about the possibility that the parties may be able to come to an agreement in the form of a Consent Order."  Id. ¶ 57.  On August 13, 2013, the parties appeared for the scheduled due process hearing, Pl.'s Mem. at 22; however, it is not entirely clear to what extent the due process hearing was conducted, compare Compl. ¶ 48 ("[The plaintiff] proceeded with [his] case in chief and called [one] witness prior to the lunch break."), and Def.'s Opp'n, Ex. 4 (Hearing Transcript) (showing the plaintiff's attorney commenced with the direct examination of Ms. Chithalina Khanchalern), with Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶ 67 ("Instead of having a hearing, the parties engaged in back and forth negotiations regarding the formulation of a Consent Order.").  However, ultimately the parties agreed to the issuance of a "Consent Order . . . that would provide [the plaintiff] with nearly all [of] the relief requested in the Due Process Complaint . . . , and would still allow the [plaintiff] to be reimbursed for his attorney['s] fees for the time and costs that [his attorney] expended in litigating the case."  Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶ 68.  On August 15, 2013, the hearing officer issued a Consent Order, consistent with these terms.  Compl., Ex. C (Consent Order) at 4.

Following the issuance of the Consent Order, the plaintiff instituted this suit to recover his attorney's fees and costs in the amount of $26,253.72 incurred preparing for and participating in the aborted administrative proceedings and negotiating the parties' settlement.[2]  Pl.'s Mem., Ex. 2 (D.C. Disability Law Group, P.C. – Project Summary ("Invoices")).  The District disputes the reasonableness of the requested fees.  See generally Def.'s Opp'n.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the nonmoving party's claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  If the Court concludes that "the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which [that party] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[2] The attorney's fees and costs are for legal services provided by Alana Hecht, Esquire, and her paralegal, Chithalina Khanchalern.  The plaintiff unacceptably fails to provide the Court with an accounting of time delineating the exact number of total hours billed specifically by attorney Hecht as opposed to the number of hours specifically billed for the services provided by paralegal Khanchalem.  He elects instead to simply submit a bill indicating that Ms. Hecht and Ms. Khanchalem collectively performed 117.8 hours of work, thereby forcing the Court to tabulate the distribution of work performed by Ms. Hecht and Ms. Khanchalem.  See Pl.'s Mem., Ex. 2 (D.C. Disability Law Group, P.C. – Project Summary ("Invoices")).  By the Court's calculation, the requested fees include 61.2 hours of work performed by attorney Hecht at the rate of $290.00 per hour, 56.6 hours of work performed by paralegal Khanchalem at the rate of $145.00 per hour, and $298.72 for the costs incurred in pursuing the litigation before this Court.  See Pl.'s Mem., Ex. 2 (Invoice).  Independently making this assessment is not an efficient use of the Court's time and resources, and the plaintiff's counsel is on notice that in the event she seeks additional fees-on-fees in this case, or if counsel represents plaintiffs in other cases, counsel will be expected to submit an exact accounting of the total amount of time performed by each professional for which reimbursement is being sought.

### III.  LEGAL ANALYSIS

Under the IDEA, federal district courts have the authority to "award reasonable attorney['s] fees as part of the costs to a prevailing party who is the parent of a child with a disability."[3]  20 U.S.C. § 1415(i)(3)(B)(i).  "A court's determination of the appropriate attorney's fees . . . is based on a two-step inquiry."  Jackson v. District of Columbia, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).  Initially, a district court must determine if the plaintiff is the prevailing party, and next, the court must "determine whether the attorney's fees sought are reasonable."  Id.  Here, the District does not contest that the plaintiff was the "prevailing party" within the meaning of § 1415(i)(3)(B), and thus concedes that he is entitled to reasonable attorney's fees under the statue.  See Def.'s Opp'n at 1 ("Plaintiff is only entitled to [three-fourths] of the [amount claimed] for this matter . . . .").  Therefore, this Court's analysis is confined to the reasonableness of the plaintiff's fee requests.

#### A.  The Reasonableness of the Plaintiff's Requested Fees

"Reasonable" attorney's fees are determined by the reasonable number of hours expended multiplied by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  Importantly, the plaintiff bears the burden of demonstrating that both the hourly rate and the number of hours expended on particular tasks are reasonable.[4]  In re North, 59 F.3d 184, 189

---

[3]Although the statute specifically addresses the awarding of "attorney['s] fees to a prevailing party who is the parent of a child with a disability," 20 U.S.C. § 1415(i)(3)(B)(i) (emphasis added), because the plaintiff is an adult-student who brought this action on his own behalf, and the parties agree that he was the prevailing party as defined by the IDEA, the Court finds that the statute also confers on him the right to also be awarded attorney's fees.  See e.g., Haywood v. District of Columbia, No. 12-cv-1722 BJR/DAR, 2013 WL 5211437 (D.D.C. Aug. 23, 2013) (awarding legal fees under the IDEA to adult-students bringing actions on their own behalf).

[4] The District does not address the amount of time the plaintiff's attorney represents she expended litigating this action or the costs the plaintiff seeks to recover.  The Court, therefore, treats the plaintiff's arguments regarding these components of his fee requests as conceded.  See Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.), aff'd, 98 F. App'x. 8 (D.C. Cir. 2004); cf. Local Civ. R. 7(b) (stating that a court may treat a motion as conceded when an opposition memorandum is not timely filed).

(D.C. Cir. 1995).  A plaintiff can show that an hourly rate is reasonable by "submit[ting] evidence on at least three fronts: the attorney's billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  Jackson, 696 F. Supp. 2d at 101 (internal quotation and citation omitted).  If the opposing party seeks to rebut the reasonableness of the rate, "it must do so by equally specific countervailing evidence." Covington v. District of Columbia, 57 F.3d at 1109 (quoting Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1326 (D.C. Cir. 1982)).  Here, the District's objections bear primarily on the final element—the prevailing market rate for the relevant community. Thus the Court need only consider whether, in its discretion, the plaintiff's attorney's use of the Laffey Matrix rates are appropriate in this case.[5]  See 20 U.S.C. § 1415(i)(3)(B).

The District objects to the reasonableness of Ms. Hecht's hourly billable rate of $290.00 for the work she performed.  Def.'s Opp'n at 2–10.  The plaintiff contends that the hourly rate of $290.00 per hour is reasonable because it is consistent with the rates for an attorney with her years of experience as set out in the Laffey Matrix, a fee schedule for the calculation of attorney's fees in complex litigation first adopted in Laffey v. Northwest Airline, Inc., 572 F. Supp. 354 (D.D.C. 1983), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984), and now updated by the United States Attorney's Office for the District of Columbia, and thus, can, if appropriate in a given case, be the prevailing market rate for attorneys litigating IDEA cases.  Pl.'s Mem at 5; Pl's Mot., Ex. 4 (Laffey Matrix).  The District contends that the "Laffey rates are not

[5] Although the defendant appears to contest Ms. Hecht's experience, asserting that "Ms. Hecht identifies herself as an 'expert special education litigator,' . . . despite having only [three to four] years of experience in this particular area," Def.'s Opp'n at 8, it provides no legal authority as to why this level of experience is inadequate under Laffey, and thus the Court finds that the plaintiff has offered sufficient evidence to establish Ms. Hecht's skill, experience, and reputation in litigating IDEA administrative proceeding cases as envisioned by Laffey, see Pl.'s Mem. at 6–7; Pl's Mem., Ex. 3 (Hecht Decl.) ¶¶ 15–27, 33–38.  The plaintiff's attorney, Ms. Hecht, submitted a verified statement documenting her normal billing practices, Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶¶ 12–13, stating that the Law Group "matches its hourly rates" to the Laffey Matrix rate and "has billed [the] DCPS for IDEA attorney's fees in numerous cases since the firm's inception . . . with hourly rates perfectly matching the adjusted Laffey Matrix," id.

presumptively appropriate" and that "[f]ederal courts need not automatically award <u>Laffey</u> rates" in IDEA matters.  Def.'s Opp'n at 6.  The District proposes that the plaintiff be awarded attorney's fees of $217.50, a rate equal to three-quarters of the <u>Laffey</u> Matrix rate because the underlying administrative proceeding was not sufficiently complex to warrant full payment under the <u>Laffey</u> matrix, <u>id.</u> at 2, 6, 8, given that "IDEA cases are generally not complex," <u>id.</u> at 6–7 (quoting <u>McClam v. District of Columbia</u>, 808 F. Supp. 2d 184, 190 (D.D.C. 2011)).  The plaintiff responds that "[e]ven if complexity was the touchstone for determining reasonable legal fees, the case litigated [on the plaintiff's behalf] was sufficiently complex to warrant <u>Laffey</u> Matrix [r]ates."  Pl.'s Reply at 7; <u>see also id.</u> at 7–15 (outlining the complexity of the case at bar).

The Court first notes that current and former members of this Court, including the undersigned, have rejected the District's argument that "IDEA cases are generally not complex" and have found the <u>Laffey</u> Matrix is an appropriate measure of the prevailing market rate in IDEA cases.  <u>E.g.</u>, <u>Jackson</u>, 696 F. Supp. 2d at 102–03 (collecting cases); <u>see also</u> <u>Garvin v. District of Columbia</u>, 851 F. Supp. 2d 101, 105–06 (D.D.C. 2012) (Walton, J.).  Thus, while the <u>Laffey</u> Matrix may be an appropriate <u>starting point</u> for determining a reasonable rate in IDEA litigation, "[t]he [m]atrix is not <u>ipso facto</u> determinative of the proper hourly rate, . . . ."  <u>Id.</u> at 106.  "In this court, there has not been a unified approach to the proper rates for attorney['s] fees in IDEA cases, and there is authority that would support a range of approaches."  <u>Young v. District of Columbia</u>, 893 F. Supp. 2d 125, 130 (D.D.C. 2012); <u>compare</u> <u>Irving v. D.C. Pub. Sch.</u>, 815 F. Supp. 2d 119, 129 (D.D.C. 2011) (citation omitted) (noting that "this court has rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation, and reaffirms that IDEA cases are sufficiently complex to allow

application of the <u>Laffey</u> Matrix"), <u>with</u> <u>McClam</u>, 808 F. Supp. 2d at 190 (refusing to apply the

full <u>Laffey</u> rate because there was "no novel issue or other complexity that turned this particular

IDEA case into a complicated piece of litigation").  And thus, because the amount of fees an

attorney is entitled to receive is discretionary, 20 U.S.C. § 1415(i)(3)(B), courts evaluate

complexity on a case-by-case basis, considering:

> (1) the length of the administrative hearing; (2) the number of documents and witnesses presented at the administrative hearing; (3) the amount of discovery required; (4) the presence of novel legal issues; (5) the quality of briefing required; and (6) the use of expert testimony,

<u>Thomas v. District of Columbia</u>, 908 F. Supp. 2d 233, 247 (D.D.C. 2012) (citation omitted), to

determine whether the <u>Laffey</u> rate is warranted.  Evaluating the complexity of a case "can require

both a quantitative and qualitative assessment."  <u>Gardill v. District of Columbia</u>, 930 F. Supp. 2d

35, 43 (D.D.C. 2013).

To demonstrate the complexity of the underlying administrative proceeding in this case,

and thus satisfy his burden of demonstrating that his attorney's rates are reasonable, the plaintiff

states:

> Litigating the case on behalf of [the plaintiff] not only required the [p]laintiff['s attorney][6] to have knowledge of the law, procedure, and trial advocacy, but also an understanding of the educational needs of [the plaintiff], a student with a complicated medical history including several surgeries, a shunt in his brain, visual impairments, cognitive impairments, and several Axis I diagnoses under the DSM-IV-TR.  As such, the [p]laintiff['s attorney][7] had to have an understanding of the services necessary to address a range of developmental disabilities preventing [the plaintiff] from accessing the curriculum due to his functional and cognitive limitations due to characteristics typically associated with cognitive and visual impairments.

---

[6] The plaintiff states in his reply that litigating the underlying administration proceeding "required the [p]laintiff to have knowledge of the law."  Pl.'s Reply at 14 (emphasis added).  The Court assumes that counsel is referring to her ability to understand the law and not the plaintiff himself.

[7] The plaintiff states in his reply that "the [p]laintiff had to have an understanding of the services necessary."  Pl.'s Reply at 14 (emphasis added).  Again the Court assumes that counsel is referring to her need to have an understanding of the services necessary and not the plaintiff himself.

Pl.'s Reply at 14.  The plaintiff further avows that "prior to [his] counsel doing much preparation

for the [d]ue [p]rocess [h]earing, she reached out to [the District's] counsel about the possibility

that the parties may be able to come to an agreement in the form of a Consent Order."  Pl.'s

Mem., Ex. 3 (Hecht Decl.) ¶ 57.  However, because these efforts went unanswered, his attorney

> came prepared to call seven witnesses during the Due Process Hearing on [his]
> behalf . . . , including two expert witnesses, a special education expert with
> [thirty] plus years of teaching experience and a Ph.D. in special education and a
> clinical psychologist with [ten] plus years of experience in the field of educational
> psychology. . . . Preparation to call these seven witnesses required a significant
> amount of time and effort on behalf of [his] counsel. . . . [She] disclosed a total of
> [thirty] exhibits, approximately 366 pages, in support of [his] claims.  [The
> District] listed [four] potential witnesses that it planned on calling. . . [His]
> counsel had to prepare thoroughly in order to be prepared to cross-examine the
> four witnesses listed by [the District], which included a special education
> coordinator, a special education teacher, a transition specialist, and a [District]
> [p]sychologist. . . . This is especially so given that these individuals worked
> directly with the student, and [the District] had knowledge and documents not
> available to [him] regarding the day-to-day goings on within [his] school. . . .
> [The District] disclosed [six] exhibits, a total of almost [fifty] pages in support of
> its case.

Pl.'s Mem. at 21–22.  Finally, the plaintiff notes that his attorney was awarded "an attorney rate

of 100% of the Laffey Matrix rate" for her work in a different IDEA administrative proceeding

by another member of this Court.  Pl.'s Mem. at 7 (citing Young v. District of Columbia, 893 F.

Supp. 2d 125 (D.D.C. 2012)).  In fulfillment of its obligation to provide "specific countervailing

evidence" to refute the reasonableness of the plaintiff's fees in this case, Covington, 57 F.3d at

1109 (citation omitted), the District argues that the underlying administrative proceeding was

"litigated solely at the administrative level," was resolved "approximately [fifty] days after the

due process complaint was filed," and involved "no issues of first impression," Def.'s Opp'n at

10.  Finally the District argues:

> Ms. Hecht conveniently mentions the only case where her work was awarded at
> 100 [percent] of the Laffey [M]atrix rate, and neglects to cite to the cases wherein

she was compensates at less than that rate including, most recently <u>Sidney Madden v. District of Columbia</u>, Civil Action No. 1:13-cv-01051 (JDB-AK) [(D.D.C.), ECF Nos. 26–27], <u>Hines v. District of Columbia</u>, Civil Action No. 1: 13-cv-00560 (JEB-AK) [D.D.C., ECF Nos. 21 and 22], and <u>Hines v. District of Columbia</u>, Civil Action No. 1:13-cv-00695 (JDB-AK) [(D.D.C.), ECF Nos. 21–22].  These inconsistencies undermine [the p]laintiff's counsel's attempt to show this case merits the rate reserves for the most difficult of federal litigation and the most skilled attorneys.

Def.'s Opp'n at 9.

Even in the most complex IDEA cases handled solely at the administrative level, the undersigned has awarded attorney's fees amounting only to a rate of approximately ninety-percent of the <u>Laffey</u> rate.[8]  <u>See</u> <u>Garvin</u>, 851 F. Supp. 2d at 107–08.  And although another member of this Court recently awarded the plaintiff's attorney the full <u>Laffey</u> rate, <u>Young</u>, 893 F. Supp. 2d at 131–33, the present case is no more complex than the other cases in which Ms. Hecht was awarded attorney's fees at a rate of seventy-five percent of the <u>Laffey</u> rate,  <u>see e.g.</u>, <u>Sidney</u>, 13-cv-1051 (finding case straightforward and noncomplex where the administrative hearing lasted eight and one-half hours, consisted of the plaintiff sponsoring five witnesses, responding to one District witness, admitting nineteen exhibits, and responding to six exhibits admitted by the district), <u>and</u> <u>Hines</u>, 13-cv-560 (finding case straight forward and noncomplex where the majority of the preparatory work leading up to the filing of the due process complaint was done by Ms. Hecht's paralegal, and Ms. Hecht "prepared for the due process hearing by drafting a five day disclosure packet and meeting with witnesses," with the case ultimately being resolved prior to beginning the administrative hearing, memorialized in a three-page Consent Order).

---

[8] The Court appreciates that it has also award fees at fifty percent of the <u>Laffey</u> rates in IDEA cases; however, that matter concerned the "fee on fee" provisions of the IDEA and not the awarding of attorney's fees for work performed at the administrative level.  <u>See</u> <u>Garvin v. District of Columbia</u>, 910 F. Supp. 2d 135 (D.D.C. 2012) (Walton, J.).

Here, the evidence leads the Court to the conclusion that an award of the full <u>Laffey</u> rate would be inappropriate because although the plaintiff's physical and developmental impairments posed a level of complexity, the underlying administrative hearing was ultimately aborted, the case did not present any novel legal issue, and it did not require extensive legal briefing or discovery.[9]  <u>See</u> <u>A.C. ex rel. Clark v. District of Columbia</u>, 674 F. Supp. 2d 149 (D.D.C. 2009). Instead, this case involved preparatory work by Ms. Hecht's paralegal, <u>see</u> Pl.'s Mem., Ex. 2 (Invoice) and 1–14, the filing of a thirty-nine page due process complaint, <u>see</u> <u>id.</u> at 14, participation at a resolution session and pre-hearing conference, <u>see</u> <u>id.</u> 14–20, and routine legal work preparing for the administrative hearing, including drafting a five day disclosure packet, drafting a proposed consent order, and meeting with witnesses, <u>see</u> <u>id.</u> 25–38; <u>A.C. ex rel. Clark</u>, 674 F. Supp. 2d at 155 ("[The <u>Laffey</u>] Matrix is inapplicable because it is intended to apply to complex federal litigation and almost all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings.").  Moreover, the case was resolved prior to extensive participation in the due processes hearing, primarily through negotiations, and memorialized in a four-page Consent Order.  <u>See generally</u> Pl.'s Mem.; <u>see also</u> Compl., Ex. C (Consent Order).  By the Court's calculation, actual participation in the administrative process itself consumed approximately four hours of counsel's time,[10] much of which consisted of negotiations between the attorneys.  <u>Compare</u> Pl.'s Reply at 12 ("[T]he parties agreed . . . to a 10:00 a.m. [administrative hearing] start time . . . ."), <u>with</u> <u>id.</u> at 13 ("[T]he [d]ue [p]rocess concluded at approximately 2:15 p.m., . . ."). Additionally, the plaintiff

---

[9] Notably, these issues were not addressed by the plaintiff.  His sole argument as to the complexity of the case, other than previously noted, is how the nature of his various disorders contributed to the complexity of the case.  <u>See</u> Pl.'s Mem. at 19–24.

[10] This is a generous assessment, which includes the purported "lunch break" that also occurred during the hearing. <u>See</u> Pl.'s Reply at 13.

presented only one witness at the hearing before the hearing was aborted so the parties could discuss settlement.  <u>See</u> <u>id.</u> at 13.

Despite the Court's finding that this case is relatively straightforward and thus does not warrant awarding of the full <u>Laffey</u> rates, given that the awarding of attorney's fees is discretionary, the Court cannot overlook the fact that the District failed to respond to the plaintiff's counsel's overtures for an early resolution and did not respond to those attempts until the evening before the scheduled administrative hearing.  <u>See</u> Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶¶ 57–59.  And ultimately, the parties reached an agreement that provided the plaintiff "with nearly all the relief requested in the Due Process Complaint . . . ."  <u>Id.</u> ¶ 68.  Because of the District's refusal to engage in these negotiations earlier, it directly contributed to an increased level of complexity of this case, which would not have occurred if plaintiff's counsel had not then been required to prepare for the administrative hearing.  <u>See e.g.</u>, Pl.'s Reply at 10–15 (indicating that the District's decision required the plaintiff's attorney to prepare to introduce thirty documents, to examine seven witnesses, and to cross-examine six witnesses, two of which were experts); Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶¶ 57–59; Pl.'s Mem. at 21–22.  Therefore, the Court concludes that it is appropriate to award the plaintiff's attorney eighty percent of the <u>Laffey</u> rate.

Accordingly, the plaintiff is entitled to receive an hourly rate of $232.00 per hour, for a total of $14,198.40, for the work performed by his attorney.

**B.      The Hours Billed for the Paralegal Services of Chithalina Khanchalern**

The District also objects to the inclusion of the hours billed by Ms. Hecht's paralegal, Ms. Khanchalern, in the Court's calculation of whether the attorney's fees sought by the plaintiff are reasonable.  It contends that the fees sought for her services should not be paid because "[the plaintiff] fails to submit sufficient evidence that Ms. Khanchalern has any education or training

as a paralegal" and because Ms. Khanchalern served at her prior employment as "'Special

Education Advocate,' a position for which compensation is barred by the Supreme Court's

decision in [Arlington Central School District Board of Educ. v. Murphy], 548 U.S. 291, 300

(2006)."  Def.'s Opp'n at 10–11.  The District notes that Ms. Khanchalern previously testified in

a separate due process hearing that she "function[s] as both the paralegal and educational

advocate" when describing the work she performs for the D.C. Disability Law Group ("Law

Group"),[11] id. at 11, and that Ms. Hecht "identified Ms. Khanchalern as an educational advocate

within the invoice filed in this case and billed the District $290.00 to prepare her as a witness

against the District," id. at 11; see Pl.'s Mem., Ex. 2 (Invoice) at 34 ("In person meeting with

witness for the upcoming due process hearing in this case, Chithalina Khanchalern, the

educational advocate who is one of the main witnesses in this case, in order to prepare her for her

testimony at the due process hearing that is upcoming.").

     The plaintiff counters that "Ms. Khanchalern's previous job title [as an educational

advocate] at Brown & Associates has no bearing on her current job title, her job duties, and only

bolsters her qualifications and experience in the field of special education."  Pl.'s Reply at 31–

32; see also Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶¶ 39–42 (stating that Ms. Khanchalern was "hired

as a paralegal and only as a paralegal," received on-the-job training, performs tasks consistent

with being a paralegal, and works under the direct supervision of Ms. Hecht at all times).  The

plaintiff explains that Ms. Khanchalern previously served as an educational advocate for many of

the current clients of the Law Group, when they were clients of her previous employer, Brown &

Associates, and that she "sometimes introduces herself as both the advocate and paralegal in

order to clarify the roles she has played in the particular student's case," Pl.'s Reply at 33, but

---

[11] D.C. Disability Law Group, P.C., is identified as the name of Ms. Hecht's law practice.

notes that "all of the tasks that Ms. Khanchalern performed in <u>this</u> case that were billed for were paralegal tasks, specifically, substantive legal tasks performed at the direction of, and under the supervision of, [Ms.] Hecht," <u>id.</u> at 28 (emphasis added).  The plaintiff also notes that while Ms. Khanchalern sometimes serves as a "fact witness" at due process hearings and "testifies about communications she sends and receives as the firm's paralegal and documents she maintains in that role," "she has never once [during her employment at the Law Group] been deemed an expert witness nor has she been asked to provide expert testimony such as the kind that would be provided by an educational advocate."  <u>Id.</u> at 25–26; <u>see also</u> Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶¶ 23–24 (stating that the Law Group employs Dr. Ida Jean Holman as an educational advocate and does not bill for the time that she expends on cases).

The American Bar Association defines a paralegal as "a person, qualified by education, training or work experience who is employed or retained by a lawyer, law office, corporation, governmental agency or other entity and who performs specifically delegated substantive legal work for which a lawyer is responsible."  Pl.'s Mem. at 9.  The plaintiff has provided detailed information about Ms. Khanchalern's education, training, and prior work experience.  <u>See</u> Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶¶ 42–49.  Ms. Khanchalern is employed by the Law Group, a law office, and performs substantive legal work under the supervision of Ms. Hecht, an attorney.  <u>See</u> Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶¶ 39, 41–42 ("Each task completed by [Ms.] Khanchalern is specifically requested by [Ms. Hecht], and [Ms. Hecht] review[s] all correspondence and other legal documents completed by [Ms.] Khanchalern.").  And, in similar requests for attorney's fees submitted by Ms. Hecht, other members of this Court have classified Ms. Khanchalern as a paralegal for the purposes of calculating reasonable awardable attorney's fees.  <u>See</u> <u>Hines v. District of Columbia</u>, No. 1:13-cv-00560 (JEB) (D.D.C. Apr. 2, 2014), ECF No. 31 (adopting in

its entirety the report and recommendation of Magistrate Judge Allen Kay, ECF No. 21) ("Ms. Khanchalern's prior experience as a special education advocate does not automatically preclude her from later being employed as a paralegal so long as the tasks she is performing are those normally performed by a paralegal."); Madden v. District of Columbia, No. 1:13-cv-01051 (JDB) (D.D.C. July 8, 2014), ECF No. 32  (adopting in its entirety the report and recommendation of Magistrate Judge Allen Kay, ECF No. 31).  Additionally, the time Ms. Khanchalern billed in relation to her attendance at the due process hearing is appropriate for billing purposes because she was there as a fact witness to testify about her work as a paralegal in the case.  See Mont. Land & Mineral Owners Ass'n v. Devon Energy Corp., No. CV 05-30-H-DWM, 2006 WL 1876859 (D. Mont. June 2, 2006) (allowing the testimony of paralegals who "have not been offered as experts . . . [and] are fact witnesses as to their preparation" of the case); M.K.B. v. Eggleston, 414 F. Supp. 2d 469, 471 (S.D.N.Y. 2006) (denying a motion to exclude the testimony of paralegals because "they are in principle no different from the office investigators that law firms typically call to testify to disputed facts").

The Court concludes that Ms. Khanchalern's work on the underlying administrative action is consistent with that of a paralegal, despite the plaintiff's attorney's conflicting billing entry identifying her as the educational advocate, Pl.'s Mem., Ex. 2 (Invoices) at 34, and thus denies the District's request to exclude the hours billed for Ms. Khanchalern's services in calculating the plaintiff's reasonable attorney's fees.  However, by the plaintiff's own admission, in the cases in which Ms. Khanchalern was awarded paralegal fees, she was consistently awarded only seventy-five percent of the Laffey Matrix rate for paralegals.  See e.g., Pl.'s Mem., Ex. 3 (Hecht Decl.) ¶ 40 (identifying two cases in which Ms. Khanchalern was recognized by another member of this Court as a paralegal and awarded a rate consistent with seventy-five percent of

the Laffey Matrix rate for paralegals ); Pl.'s Mem. at 8–9.  Seeing no reason to depart from the position taken by other members of this Court concerning the amount Ms. Khanchalern should be paid as a paralegal, the Court too concludes that the plaintiff should be awarded an hourly rate in the amount of $108.74, seventy-five percent of the $145.00 Laffey rate for paralegals, for a total award of $6,154.68.

### C.    Costs

The plaintiff also requests reimbursement of costs in the amount of $298.72, Pl.'s Mem., Ex. 2 (Invoice) at 40, and the District does not specifically object to reimbursement of any these costs, see generally Def.'s Opp'n.  The Court, therefore, grants the plaintiff $298.72 for the costs incurred litigating the underlying administrative proceeding.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the plaintiff's motion for summary judgment and also the District's cross-motion for summary judgment. Accordingly, the Court will award the plaintiff fees as follows:  (1) $14,198.40 for the work performed by the plaintiff's attorney; (2) $6,154.68 for the work performed by Ms. Khanchalern; and (2) $298.72 for costs incurred by the plaintiff in prosecuting this case.

**SO ORDERED** this 3rd of December, 2014.[12]


REGGIE B. WALTON
United States District Judge

---

[12] An Order consistent with this Memorandum Opinion shall be issued contemporaneously.